1
2
3
4
5
6
7

8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

KATHLEEN LOWDEN, et al.,

11                    Plaintiffs,

12          v.

13    T-MOBILE, USA, INC.,

14                    Defendant.

15

NO. C05-1482P

ORDER ON DEFENDANT'S
MOTION TO DISMISS OR STAY
AND TO COMPEL ARBITRATION

16

## Introduction

17          This matter comes before the Court on Defendant T-Mobile's Motion to Dismiss or Stay and

18    to Compel Arbitration.  (Dkt. No. 10).  Having reviewed all the pleadings and supplementary

19    materials, and having heard oral argument, the Court finds that the arbitration provisions in

20    Defendant's wireless telephone service agreements contain terms that are substantively unconscionable

21    under Washington law.  Furthermore, under these circumstances, the unconscionable provisions at

22    issue permeate the purpose and effect of the arbitration agreements such that severance of the

23    offending provisions is inappropriate, and neither arbitration agreement can be enforced.  Accordingly,

24    Defendant's motion is DENIED.

25

26    ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY AND TO COMPEL ARBITRATION - 1

**Background**

The named plaintiffs in this putative class action are Kathleen Lowden and John Mahowald. (Compl. at 4-5, ¶ 2.1).  Ms. Lowden, Mr. Mahowald, and the other putative class members are or were customers of Defendant's wireless telephone services, and they seek to maintain a nationwide class action.  (Id. at 12-13, ¶¶ 4.1-4.6).  Defendant T-Mobile USA, Inc., is a national telecommunications corporation that is incorporated in Delaware and has its principal place of business in Bellevue, Washington.  (Id. at 5, ¶ 3.2).  Formerly, the company was known as Voicestream Wireless.  (Def's. Opening Br. at 1-2).

Plaintiff Lowden is apparently the ex-wife of John Miller, the person with whom Defendant contracted to provide the wireless phone service that Lowden uses.  (Id. at 5).  Miller first purchased a phone and signed a service agreement in 2000.  (Id.).  The service agreement included an arbitration provision that states in relevant part:

> Any controversy, claim or dispute between you and Company arising under this Agreement, excluding actions by Company to collect unpaid charges, shall be submitted to final, binding arbitration under the auspices of the American Arbitration Association ("AAA") pursuant to its published Wireless Industry Arbitration Rules, incorporated herein by this reference ... [a]ll claims shall be arbitrated individually and you agree that no person shall bring a punitive [sic] or certified class action to arbitration or seek to consolidate or bring previously consolidated claims in arbitration.  The arbitrator shall have no authority to award punitive damages ... YOU ACKNOWLEDGE THAT THIS ARBITRATION PROVISION CONSTITUTES A WAIVER OF ANY RIGHT TO A JURY TRIAL.

(Def's. Opening Br., Decl. of Derek Chang at ¶ 17; Ex. 3, at 3, ¶ 19).

Plaintiff Mahowald first purchased a phone and contracted for wireless phone service with Defendant in 2002.  (Id. at 2-3).  Defendant does not have a copy of any signed service agreement with Mahowald, but its Marketing Director declares that he would have been required to sign one. (Id., Decl. of Derek Chang at ¶¶ 5-11).  The agreement he would have signed provides:

> ANY CLAIM OR DISPUTE BETWEEN YOU AND US ARISING UNDER OR IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, AND/OR OUR PROVISION TO YOU OF GOODS, SERVICE, OR UNITS SHALL BE SUBMITTED TO FINAL, BINDING ARBITRATION WITH THE AMERICAN ARBITRATION ASSOCIATION ... [n]o party may act as a representative of other claimants or potential

claimants in any dispute, and two or more individuals' disputes may not be consolidated or otherwise determined in one proceeding.  An arbitrator may not award relief in excess or inconsistent with the provisions of the Agreement, order consolidation or arbitration on a classwide basis, or award lost profits, punitive, incidental, or consequential damages or any other damages other than the prevailing party's direct damages, except that the arbitrator may order injunctive or declaratory relief pursuant to applicable law.  All administrative expenses of an arbitration will be equally divided between you and Us, except if the claim is less than $1000, you will be obligated to pay only $25.  If the claim is less than $25, We will pay all administrative expenses.  Each party agrees to pay the fees and costs of its own counsel, experts, and witness at the arbitration.  Subject to the foregoing limitations on consolidated or classwide proceedings, you agree, however, that if you fail to timely pay amounts due, We may assign your account for collection and the collection agency may pursue such claims in court limited strictly to the collection of the past due debt and any interest or cost of collection permitted by law or the Agreement.

YOU ACKNOWLEDGE AND AGREE THAT THIS ARBITRATION PROVISION CONSTITUTES A WAIVER OF ANY RIGHT TO LOST PROFITS, PUNITIVE, SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, OR TREBLE DAMAGES ("DISCLAIMED DAMAGES"), A JURY TRIAL OR PARTICIPATION AS A PLAINTIFF OR AS A CLASS MEMBER IN A CLASS ACTION.  IF FOR ANY REASON THIS ARBITRATION CLAUSE IS DEEMED INAPPLICABLE OR INVALID, YOU AND WE BOTH WAIVE ANY CLAIMS TO RECOVER DISCLAIMED DAMAGES AND ANY RIGHT TO PURSUE, OR PARTICIPATE AS A PLAINTIFF OR AS A CLASS MEMBER IN, CLAIMS ON A CLASSWIDE, CONSOLIDATED, OR REPRESENTATIVE BASIS.

(Id., Decl. of Derek Chang at ¶ 6; Ex. 1, at 3, ¶ 3).

Defendant's Marketing Director also declares that Mr. Mahowald would have received a superseding "Terms and Conditions" agreement as part of the "Welcome Guide" that Defendant regularly ships with new phones and upgrades.  (See id. at 2-4, n.1).  The "Terms and Conditions" agreement contains an arbitration agreement with several terms that differ from those in the service agreement.  However, as will be discussed, Defendant has not established the enforceability of that agreement, so those terms are not discussed.

Mr. Mahowald does not explicitly deny that he signed a service agreement, but instead contends that Defendant has not proven he signed or received any agreements.  (Pls.' Opp'n at 1).  He asserts that he has no contract with Defendant except for an oral contract memorialized in T-Mobile's customer care records.  (Id., Decl. of Alex Rose at ¶ 3, 18).

ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY AND TO COMPEL ARBITRATION - 3

1    Plaintiffs filed their complaint in this case on July 27, 2005, alleging breach of contract and

2  violation of the Washington Consumer Protection Act (CPA) based on Defendant's billing practices.

3  (See Compl. at 10-15).  Specifically, Plaintiffs allege that Defendant imposed a "USF-RCR," or

4  "Universal Service Fee - Regulatory Cost Fee" in a deceptive manner, leading customers to believe it

5  was a government-mandated tax; imposed charges on customers for exceeding their allotted monthly

6  minutes, but imposed those charges in months in which the calls were not made; and imposed roaming,

7  long-distance, and other fees for services when those services were supposed to be free of charge.

8  (See Compl. at 7-10, ¶¶ 1.1–1.16).  Defendant now brings this Motion to Dismiss or Stay and to

9  Compel Arbitration.

10                                          **Analysis**

11    The Federal Arbitration Act ("FAA") provides that an arbitration provision in a contract

12  "evidencing a transaction involving commerce ... is valid, irrevocable, and enforceable, save upon such

13  grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This section of

14  the FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements,

15  notwithstanding any state substantive or procedural policies to the contrary."  Moses H. Cone Mem'l

16  Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  Thus, district courts must compel arbitration

17  where a valid agreement to arbitrate exists.  See Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207

18  F.3d 1126, 1130 (9th Cir. 2000).  The party resisting arbitration has the burden of proving that the

19  arbitration agreement is unenforceable.  See Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91-92

20  (2000).

21    Whether the arbitration agreements in this case are valid is controlled by state law.  See, e.g.,

22  Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987) ("state law, whether of judicial or legislative origin, is

23  applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of

24  contracts generally.") (emphasis in original); see also Ticknor v. Choice Hotels, Intern., Inc., 265 F.3d

25  931, 936-37 (9th Cir. 2001).

26  ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY AND TO COMPEL ARBITRATION - 4

1        A. <u>Lack of Agreement</u>

2        Plaintiff Lowden clearly has an agreement; it is the one under which she now sues, and which

3   her husband voluntarily signed in order to obtain T-Mobile services.[1]  Therefore, she is bound by the

4   provisions of that agreement to the extent that the agreement is enforceable.  <u>See</u> <u>Skagit State Bank v.</u>

5   <u>Rasmussen</u>, 109 Wn.2d 377, 381 (1987).

6        Plaintiff Mahowald is a different story.  While not actually denying that he signed a service

7   agreement, Plaintiffs argue that Defendant has "presented no competent or admissible evidence based

8   upon personal knowledge" that Mr. Mahowald was contractually bound by any signed form or mailed

9   "Welcome Guide."  (Pls.' Opp'n at 1).  Further, Plaintiffs argue that the only contract Mr. Mahowald

10  could have is a verbal one, noted in Defendant T-Mobile's customer care records.  (<u>Id.</u>).

11        The FAA requires a district court to issue an order compelling arbitration "upon being satisfied

12  that the making of the agreement for arbitration ... is not in issue," though "if the making of the

13  agreement is in issue ... the court shall proceed summarily to the trial thereof."  9 U.S.C. § 4.

14  However,

15        to put such matters in issue, it is not sufficient for the party opposing arbitration to utter
          general denials of the facts on which the right to arbitration depends.  If the party seeking
16        arbitration has substantiated the entitlement by a showing of evidentiary facts, the party
          opposing may not rest on a denial but must submit evidentiary facts showing that there is a
17        dispute of fact to be tried.

18  <u>Oppenheimer & Co., Inc. v. Neidhardt</u>, 56 F.3d 352, 358 (2d Cir. 1995).

19        Under Washington law, Defendant's evidence that signed service agreements are required

20  before it will provide wireless phone service is business custom evidence that is "admissible and

21  relevant to prove or disprove the existence of a contract."  <u>Industrial Electric-Seattle, Inc. v. Bosko,</u>

22  _____

23        [1]As Defendant notes in its Opening Brief, there may be an issue of standing with respect to
    Plaintiff Lowden's claims.  (Def's. Opening Br. at 11-12).  However, under the FAA, the district
24  court's role is limited; this Court can determine "only whether a written arbitration agreement exists,
    and if it does, enforce it according to its terms."  <u>Simula, Inc. v. Autoliv, Inc.</u>, 175 F.3d 716, 720 (9th
25  Cir. 1999).  Accordingly, to the extent that Ms. Lowden seeks to sue under a contract with Defendant
    that contains a written arbitration agreement, she is bound by the enforceable terms of that agreement.
26

67 Wn.2d 783, 797 (1966). Defendant has thus substantiated its claim that the parties entered into the arbitration agreement contained in the service agreement. However, Mr. Mahowald has failed to place the making of that arbitration agreement in issue because he does not explicitly deny that he signed the service agreement. Therefore, the Court concludes that he is bound by the provisions of that arbitration agreement to the extent that the agreement is enforceable.

However, Defendant has not substantiated its entitlement to arbitration based on the "Welcome Guide" or anything else it mails to customers. Proof of mailing must be made by a showing of "(1) an office custom with respect to mailing, and (2) compliance with the custom in the specific instance." Matsko v. Dally, 49 Wn.2d 370, 376-77 (1956). Here, the declaration of Defendant's Marketing Director is evidence of Defendant's custom, but there is no similar declaration or other evidence of compliance with that custom when Plaintiff Mahowald's "Welcome Guide" was supposedly mailed. See, e.g., id. at 377 (no proof of compliance without testimony of clerk or other person who customarily mailed from the office); Kaiser Aluminum & Chem. Corp. v. Dep't of Labor & Indus., 57 Wn. App. 886, 890 (1990) (insufficient proof of custom and compliance).

To summarize, Plaintiff Lowden is bound by the provisions of the arbitration agreement contained in the "Terms and Conditions" agreement that her ex-husband signed in 2000,[2] to the extent that agreement is enforceable. Plaintiff Mahowald is bound the provisions of the arbitration agreement contained in the "Terms and Conditions" agreement he would have been required to sign in 2002 as a condition of his service, to the extent that agreement is enforceable.

B. Procedural Unconscionability

Plaintiffs argue next that their arbitration agreements are unenforceable because they are procedurally unconscionable. (Pls.' Opp'n at 7-8). Procedural unconscionability is "the lack of

_____

[2] Defendant asserted that Lowden would also have received a "Terms and Conditions" agreement with her phone when it was delivered, (Def's. Opening Br., Decl. of Derek Chang at 2, ¶¶ 4-5, Ex. 4), but Plaintiffs' counsel later produced the original signed service agreement, (see Def's. Reply at 3, Decl. of Bradley Fischer, at ¶ 5, Ex. 3), and it is identical to the one that would have been mailed. Therefore, Defendant's custom with respect to mailing is irrelevant as to her agreement.

1    meaningful choice, considering all the circumstances surrounding the transaction, including (1) the

2    manner in which the contract was entered, (2) whether each party had a reasonable opportunity to

3    understand the terms of the contract, and (3) whether the important terms were hidden in a maze of

4    fine print." Adler v. Fred Lind Manor, 153 Wn.2d 331, 345 (2004) (internal citations omitted). These

5    three factors are not to be applied "mechanically" without regard to whether a meaningful choice

6    actually existed. Id.

7          Plaintiffs rely on the fact that these agreements are contracts of adhesion. (Pls.' Opp'n at 7-8).

8    Plaintiffs are correct that the agreements are adhesive because they are (1) standard form printed

9    contracts, (2) prepared by T-Mobile and submitted to prospective customers on a take-it-or-leave-it

10   basis, and (3) there is no true equality of bargaining power between T-Mobile and its customers. See

11   Adler, 153 Wn.2d. at 347-48. However, contracts of adhesion are not necessarily unconscionable.

12   Zuver v. Airtouch Commc'ns, Inc., 153 Wn.2d 293, 304 (2004). Indeed, despite the adhesive nature

13   of these agreements, Plaintiffs did not experience the requisite "lack of meaningful choice."

14         First, there is no evidence to suggest that the manner in which they entered into their contracts

15   was oppressive, deceptive, or even hurried. Compare Zuver, 153 Wn.2d at 306 (holding that

16   agreement was not procedurally unconscionable because plaintiff had 15 days to consider the contract,

17   and opportunity to contact counsel or defendant with questions), with Adler, 153 Wn.2d at 348

18   (remanding for determination of procedural unconscionability because factual dispute existed as to

19   whether employer threatened discharge if plaintiff did not sign the agreement).

20         Second, there is no evidence to suggest that Plaintiffs did not have a reasonable opportunity to

21   understand the terms of the agreements. The fact that they had as much as time as they wanted to

22   consider the agreements before signing them is conclusive on this point. See Zuver, 153 Wn.2d at 306

23   (reasonable opportunity where the defendant did not demand immediate return of the agreement and

24   plaintiff had 15 days to consider it) citing Luna v. Household Fin. Corp. III, 236 F.Supp.2d. 1166,

25

26   ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY AND TO COMPEL ARBITRATION - 7

1   1176 (W.D. Wash. 2002) (three day rescission period under the Truth in Lending Act was sufficient to

2   provide reasonable opportunity to consider the terms of an agreement).

3          Finally, although the typeface is relatively small, these arbitration provisions are not hidden in a

4   "maze of fine print."  The provisions in both Plaintiffs' agreements are clearly labeled "Mandatory

5   Arbitration," and just above the signature line in both service agreements, there is specific reference to

6   the numbered paragraph in the attached "Terms and Conditions" that contains the arbitration

7   provisions.  These features militate against a finding of procedural unconscionability.  See Adler, 153

8   Wn.2d at 349-50 (no "maze of fine print" where the first sentence of the arbitration clause explicitly

9   stated that any disputes would be arbitrated).

10          C.  Substantive Unconscionability

11          Plaintiffs also argue that their arbitration agreements are unenforceable because they are

12   substantively unconscionable.  (Pls.' Opp'n at 8-17).  Substantive unconscionability "involves those

13   cases where a clause or term in the contract is alleged to be one-sided or overly harsh," and is

14   described sometimes with terms such as "'shocking to the conscience,' 'monstrously harsh,' or

15   'exceedingly calloused.'"  Zuver, 153 Wn.2d at 303.  Although substantive unconscionability is a

16   question of law, it is "based on the factual circumstances surrounding the transaction."  Tjart v. Smith

17   Barney, Inc., 107 Wn. App. 885, 898 (2001).  One such circumstance that should be considered is the

18   consumer context of the transaction.  See Luna, 236 F.Supp.2d at 1183 (citing Washington cases).

19   Plaintiffs allege that their agreements are substantively unconscionable on several grounds.

20          1.  Prohibition of Class Relief

21          Defendant is correct that some Washington courts have enforced arbitration provisions that

22   effectively prevent class relief.  See Heaphy v. State Farm Mut. Auto. Ins. Co., 117 Wn. App. 438,

23   447 (2003), citing Stein v. Geonerco, Inc., 105 Wn. App. 41, 49 (2001).  Washington courts have also

24   upheld arbitration provisions even though they required arbitration of CPA claims.  See Stein, 105

25   Wn. App. at 49 n.1, citing Garmo v. Dean, Witter, Reynolds, Inc., 101 Wn.2d 585, 590 (1984).

26   ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY AND TO COMPEL ARBITRATION - 8

1    However, neither <u>Heaphy</u> nor <u>Stein</u> addressed the unconscionability of class action prohibitions, but

2    instead rested their holdings on the plaintiffs' failures to "demonstrate a conflict with statutory

3    provisions, contract law, or due process requirements."[3]  <u>See</u> <u>Heaphy</u>, 117 Wn. App. at 447; <u>Stein</u>,

4    105 Wn. App. at 50.

5         Plaintiffs rely on <u>Luna</u>, in which Judge Lasnik of this Court held that a prohibition of class

6    actions was unconscionable because it prevented effective vindication of statutory rights.  236

7    F.Supp.2d. at 1178-79, <u>citing</u> <u>Darling v. Champion Home Builders Co.</u>, 96 Wn.2d 701, 706 (1982)

8    (discussing the importance of class actions in the consumer protection context) <u>and</u> <u>Mendez v. Palm</u>

9    <u>Harbor Homes</u>, 111 Wn. App. 446, 465 (2002) (explaining the unconscionability of preventing citizens

10   from access to the courts to vindicate their rights).  The <u>Luna</u> Court also held that the class action

11   prohibition was one-sided because there was "no reasonable possibility" that the corporate defendant

12   would ever institute a class action against its individual customers.  <u>Id.</u> at 1179.

13        The Court is persuaded by the reasoning in <u>Luna</u> on each of these scores.  First, the class

14   action prohibitions deprive Plaintiffs of the means to effectively vindicate their rights under the CPA.

15   This is so because, given the nature of the claims involved in this case, the prohibition "is likely to bar

16   actions involving practices applicable to all potential class members, but for which an individual

17   consumer has so little at stake that she is unlikely to pursue her claim."  <u>Luna</u>, 236 F.Supp.2d at 1179.

18   Thus, the class action prohibitions in these arbitration agreements have been used as "a sword to strike

19   down access to justice instead of as a shield against prohibitive costs."  <u>Id.</u>, <u>quoting</u> <u>Mendez</u>, 111 Wn.

20   App. at 465.  Second, although the class action limitations in these arbitration provisions are nominally

---

22        [3]At oral argument, Defendant's counsel advised the Court that the Washington Supreme Court
     was hearing oral argument that same day in the matter of <u>Scott v. Cingular Wireless</u>, No. 77406-4.
23   The <u>Scott</u> case places squarely at issue the question of whether class action prohibitions contained in
     arbitration agreements are unconscionable under Washington law and therefore unenforceable.  This
24   Court directed the parties to show cause why the ruling in the instant case should not be deferred,
     given the likelihood that <u>Scott</u> will be controlling on the issues here.  (Dkt. No. 28).  However, both
25   parties responded by urging this Court to rule on the instant motion.  Accordingly, the Court now
     rules on the instant motion, though it is mindful of the fact that Washington law is currently in flux.
26   ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY AND TO COMPEL ARBITRATION - 9

1   mutual, they are effectively one-sided because there is no conceivable set of facts under which T-

2   Mobile would bring a class action against its customers.  For these reasons, the prohibitions on class

3   actions contained in Plaintiffs' arbitration agreements are substantively unconscionable.

4               2.  Limitation of Remedies

5        A limitation of remedies may also be nominally mutual, yet have the impermissible <u>effect</u> of

6   being so one-sided and harsh that it is substantively unconscionable.  <u>See</u> <u>Zuver</u>, 153 Wn.2d at 318.  In

7   <u>Luna</u>, Judge Lasnik of this Court found that a remedies limitation was overly one-sided because it

8   prohibited any resort to judicial remedies, except that either the defendant (a lending company) or the

9   plaintiffs (the borrowers) could bring a lawsuit to protect or foreclose on property involved in a loan.

10  236 F.Supp.2d at 1180.  Because the limitation allowed a judicial forum in the only type of suit the

11  defendant would ever bring, while borrowers could only go to court in one of the many types of suits

12  they might bring, the Court found the limitation so one-sided that it was unconscionable.  <u>Id.</u>

13       In this case, the remedies limitations are not so one-sided that they are substantively

14  unconscionable.  For the most part, the agreements require both sides to arbitrate disputes.  However,

15  Plaintiff Lowden's arbitration agreement excludes "actions by the Company to collect unpaid

16  charges," while Plaintiff's Mahowald's agreement states that Defendant may assign customer accounts

17  for collection and that the collection agency may pursue claims in court "limited strictly to the

18  collection of the past due debt" and any permissible interest or cost of collection.  These limited

19  exclusions are not overly harsh or shocking to the conscience.  Collection actions are standard and

20  fairly routine business practices.  In Mr. Mahowald's case, T-Mobile is only permitted to assign an

21  account to a collection agency, and a collection agency's later decision to bring suit is not certain.  In

22  addition, these arbitration provisions presumably do not bar a customer from causing a suit to be

23  brought against Defendant, for example by forwarding information to the Attorney General so that she

24  or he may decide whether or not to bring a CPA claim on behalf of the citizens of Washington.  <u>See</u>

25  RCW 19.86.080-095.

26  ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY AND TO COMPEL ARBITRATION - 10

1        3.  Limitation on Damages

2        Plaintiffs argue next that the damages limitations in each of their arbitration agreements are

3   substantively unconscionable.  (Pls.' Opp'n at 13-14).  Plaintiff Lowden's arbitration agreement

4   provides that the "arbitrator shall have no authority to award punitive damages," (Def's. Opening Br.,

5   Decl. of Derek Chang, Ex. 3, at 3, ¶ 19), and Plaintiff Mahowald's agreement purports to be a waiver

6   of punitive, exemplary, and treble damages (id., Ex. 1, at 3, ¶ 3).  The Court finds these limitations to

7   be substantively unconscionable for the same reasons that the class action prohibitions are

8   substantively unconscionable.

9        First, these damages limitations are substantively unconscionable because they are effectively

10  one-sided.  Punitive or exemplary damages are not allowed in Washington unless specifically

11  authorized by the legislature.  See Dailey v. North Coast Life Ins. Co., 129 Wn.2d 572, 590 (1996).

12  Indeed, the CPA's treble damages provision is one example of such specific authorization.  See id. at

13  592; Barr v. Interbay Citizens Bank of Tampa, Fla., 96 Wn.2d 692, 699-700 (1981); Gould v. Mut.

14  Life Ins. Co. of New York, 735 F.2d 1165, 1166-67 (9th Cir. 1984).  Punitive damages are thus

15  recoverable only pursuant to statutory claims.  However, while the damages limitations here are

16  nominally mutual, the Court cannot imagine a scenario in which Defendant would ever seek punitive

17  damages, under the CPA or otherwise, against its individual customers.  Therefore, the limitations are

18  one-sided in effect and substantively unconscionable.  See Zuver, 153 Wn.2d at 318-19 (holding that a

19  damages limitation was substantively unconscionable because it prohibited punitive damage awards for

20  any common law claims brought by an employee, but permitted the employer to recover such damages

21  for the only type of claim it would ever likely bring, a breach of a confidentiality agreement).

22       Second, these damages limitations are substantively unconscionable because they deprive

23  Plaintiffs of the means to effectively vindicate their rights under the CPA.  The punitive damages

24  provision of the CPA has the purposes of enabling injured plaintiffs to pursue their own claims and to

25  reimburse them for enforcing the Act on behalf of the general citizenry.  St. Paul Fire & Marine Ins.

26  ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY AND TO COMPEL ARBITRATION - 11

1   Co. v. Updegrave, 33 Wn. App. 653, 658 (1983).  If this measure of damages is unavailable, Plaintiffs'

2   ability to initiate suit is dramatically hindered.  Therefore, as in the context of the class action

3   prohibition, the limitations on punitive damages under these circumstances "works oppression," Luna,

4   236 F.Supp.2d at 1179, quoting Mendez, 111 Wn. App. at 465, because the limitations strip Plaintiffs

5   of a statutorily authorized means to enforce their rights, as well as the rights of the Washington

6   citizenry at large.  For these reasons, the damages limitations in both of Plaintiffs' arbitration

7   agreements are substantively unconscionable to the extent that they preclude the award of punitive or

8   exemplary damages under the CPA.

9                              4.  Prohibition of Attorneys' Fees

10          Plaintiff Lowden's arbitration agreement does not prohibit attorneys' fees, and therefore

11  cannot be substantively unconscionable on this basis.  Plaintiff Mahowald's arbitration agreement,

12  however, provides that "each party agrees to pay the fees and costs of its own counsel, experts, and

13  witness at the arbitration."  (Def's. Opening Br., Decl. of Derek Chang, Ex. 1, at ¶ 3).  The provision

14  also states that "an arbitrator may not award relief in excess or inconsistent with the provisions of this

15  Agreement, ... except that an arbitrator may award injunctive or declaratory relief."  (Id.).  This makes

16  it clear that customers bringing claims against Defendant may not recover attorneys' fees.

17          In Zuver, the Court held that a clause providing that "parties shall bear their own respective

18  costs and attorneys fees" was substantively unconscionable because it undermined the plaintiff's rights

19  to attorney fees under the Washington Law Against Discrimination.  153 Wn.2d at 355.  Here, there is

20  likewise a clear prohibition of attorneys' fees, as well as a specific entitlement to them under the

21  statute furnishing one of Plaintiffs' causes of action.  See RCW 19.86.090 (permitting recovery of

22  actual damages, costs of suit, "including reasonable attorneys' fees").  Therefore, the prohibition of

23  attorneys' fees in Plaintiff Mahowald's arbitration agreement is substantively unconscionable.

24

25

26  ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY AND TO COMPEL ARBITRATION - 12

1          5.  Limitations on Discovery

2          Plaintiffs argue that their arbitration agreements are substantively unconscionable because the

3   AAA's Wireless Industry Arbitration Rules, which are incorporated into their agreements by reference,

4   do not allow for the adequate discovery that is necessary to effectively vindicate consumer rights

5   under the CPA.  (Pls.' Opp'n at 15-16).

6          It is true that the "Fast Track" procedures applicable to claims involving less than $2,000

7   generally prohibit discovery, but it is available "in extraordinary cases when the demands of justice

8   require it."  (Id., Decl. of Alex Rose, at 28, ¶ F-9).  Moreover, the "Fast Track" procedures cannot be

9   applied without agreement of the parties in cases where there is no disclosed monetary claim, or where

10  equitable relief is sought.  (Id., Decl. of Alex Rose, at 20).  In the instant case, Plaintiffs have not as

11  yet disclosed the sums sought by Mr. Mahowald or Ms. Lowden (although they estimate classwide

12  damages to be $40 million), and they do in fact pray for injunctive relief.  (See Compl. at ¶¶ 1.1, 5.10,

13  6.8, 8.1-8.6).  As a result, Plaintiffs may refuse to agree to "Fast Track" procedures, and instead insist

14  on "Regular Track" Rules which provide that the arbitrator "may issue a subpoena for witnesses or

15  documents upon the request of any party or independently."  (Pls.' Opp'n, Decl. of Alex Rose, at 24, ¶

16  R-30).  For this reason, the incorporated Wireless Industry Arbitration Rules do not render the

17  arbitration agreements in this case substantively unconscionable.

18         Moreover, there is inevitable uncertainty as to how an arbitrator might interpret the Rules and

19  conduct an arbitration, and it is not the proper purview of this Court to indulge in such speculation.  In

20  Zuver, the Court held that an ambiguous attorneys' fees provision was not substantively

21  unconscionable because plaintiff's contention that she would not be entitled to fees was "mere

22  speculation" as to how the arbitrator would interpret the provision and applicable law.  153 Wn.2d at

23  311, citing PacifiCare Health Systems, Inc. v. Book, 538 U.S. 401, 406-07 (2003).  This reasoning

24  also demonstrates why potential discovery limitations in arbitration cannot invalidate the agreements in

25  this case, because there are many discretionary decisions that the arbitrator would make.

26  ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY AND TO COMPEL ARBITRATION - 13

1          6.  Cost-Prohibitiveness of Arbitration

2          Washington law is clear on this issue: "[w]here a party seeks to invalidate an arbitration

3   agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden

4   of showing the likelihood of incurring such costs." Adler, 153 Wn.2d at 353, citing Green Tree Fin.

5   Corp., 531 U.S. at 92.  Carrying the burden requires production of "specific information" about the

6   party's personal finances and the prospective arbitration fees. Id. at 354, citing Mendez v. Palm

7   Harbor Homes Inc., 111 Wn. App. 446, 465 (holding that plaintiff satisfied the burden with a personal

8   affidavit describing his circumstances and fee information obtained from the American Arbitration

9   Association).  Limited discovery may be appropriate to determine whether costs are prohibitive, but

10  once they are established, they may be offset by contrary evidence, including an offer by the other

11  party to pay all or a part of the arbitration fees and costs. Id.

12         Here, Plaintiffs allege that arbitration would "probably" cost at least $375 to $550 for each

13  member of the class to arbitrate a claim worth on a few hundred dollars, (Pls.' Opp'n at 17), yet they

14  provide no documentation or other information to back it up.  Moreover, Defendant T-Mobile has

15  stated its willingness to pay all fees and costs, (Def's. Reply at 11), which offsets any evidence that

16  Plaintiffs could provide, see Zuver, 153 Wn.2d at 310.  For these reasons, neither of Plaintiffs'

17  arbitration agreements are unconscionable with respect to arbitration fees and costs.

18         D.  Severability

19         The parties contest whether, if this Court finds any of the provisions of the arbitration

20  agreements to be unconscionable, it should sever those provisions or hold that the entire agreements

21  are unenforceable.  (Pls.' Opp'n at 18-19; Def's. Reply at 12).

22         "Courts are generally loath to upset the terms of an agreement and strive to give effect to the

23  intent of the parties." Zuver, 153 Wn.2d at 320.  However, unconscionable provisions may sometimes

24  "taint" or "pervade" the entire arbitration agreement, see id., or reveal an "insidious pattern" of

25  seeking to tip the scales unfairly, Adler, 153 Wn.2d at 359, quoting Ingle v. Circuit City Stores, Inc.,

26  ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY AND TO COMPEL ARBITRATION - 14

1   328 F.3d 1165, 1180 (9th Cir. 2003). In such cases, severance may be inappropriate and the

2   arbitration agreement as a whole may be unenforceable. Zuver, 153 Wn.2d at 320; see also Luna, 236

3   F.Supp.2d at 1183.

4        The Court finds that these arbitration agreements are tainted with substantive unconscionability

5   and that they cannot be enforced. Although some of the provisions are not so one-sided as to be

6   offending, the unconscionable provisions reveal a pattern of attempting to deprive Defendant's

7   customers of a way to enforce their rights against Defendant in a meaningful way. The fact that these

8   are consumer claims brought for individually small sums of money makes the damages limitations,

9   class action prohibitions, and the attorneys' fees limitation in Plaintiff Mahowald's agreement

10   unconscionable to the point of tainting these entire arbitration agreements with unconscionability.

11   These provisions also threaten the strong public policy of protecting consumers in Washington State.

12   This "fundamental unfairness" renders these entire agreements substantively unconscionable and

13   therefore unenforceable. See Luna, 236 F.Supp.2d at 1183; see also Janda v. T-Mobile, USA, Inc.,

14   ___ F.Supp.2d ___, 2006 WL 708936 (N.D. Cal. Mar. 17, 2006).

15                             **Conclusion**

16        Plaintiff Lowden is bound by the service agreement that her ex-husband signed with Defendant

17   T-Mobile. Plaintiff Mahowald is bound by the service agreement that Defendant asserts he would

18   have been required to sign, because Mr. Mahowald has not placed the existence of that agreement "in

19   issue" under the FAA. However, he is not bound by the terms of the "Welcome Guide" because

20   Defendant has not substantiated its entitlement to arbitration based on that document.

21        Neither of Plaintiffs' arbitration agreements are procedurally unconscionable because each had

22   a meaningful choice with respect to whether or not to enter into the agreements. However, the class

23   action prohibitions, damages limitations, and attorneys' fees limitation are substantively

24   unconscionable under Washington law, and their unconscionable purpose and effect pervades the

25   arbitration agreements. Defendant's Motion to Compel Arbitration is DENIED.

26   ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY AND TO COMPEL ARBITRATION - 15

1    The clerk is directed to provide copies of this order to all counsel of record.

2    Dated:  April 13, 2006

3

4                                    s/Marsha J. Pechman
                                     Marsha J. Pechman
5                                    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY AND TO COMPEL ARBITRATION - 16